## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD INSURANCE COMPANY OF THE MIDWEST | ) ) ) ) ) | C.A. No.: _____ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ENCORE MARKETING INTERNATIONAL, INC., REGENT GROUP, INC., PROVIDE-COMMERCE, INC., f/k/a PROFLOWERS, INC. and LIBERTY MEDIA CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Now come plaintiffs Hartford Fire Insurance Company ("Hartford Fire"), Hartford Casualty Insurance Company ("Hartford Casualty"), and Hartford Insurance Company of the Midwest ("Hartford Midwest") (collectively, "Hartford") and file this Complaint, alleging as follows:

### Introduction

1.     In this action, Hartford seeks a declaratory judgment concerning the rights and obligations of the parties under certain insurance policies issued by Hartford to the defendants, Encore Marketing International, Inc. ("Encore"), Regent Group, Inc. ("Regent"), Provide-Commerce, Inc. ("Provide-Commerce"), and Liberty Media Corporation ("Liberty Media").

2.      Specifically, Hartford seeks a judicial declaration concerning whether it is obligated to defend or indemnify Encore, Regent, Provide-Commerce, Liberty Media, or any of them in connection with certain class action lawsuits.

3.      All of the class action lawsuits allege a similar scheme by Encore, Regent and Provide-Commerce to profit from unauthorized charges to credit, debit, and PayPal accounts owned by Provide-Commerce's customers.  In brief, and as more fully described below, when customers purchased products from various Internet stores operated by Provide-Commerce, they were allegedly offered a chance to claim a gift code redeemable for a discount on a future purchase.  Customers who attempted to claim the gift code were redirected to a website operated by Regent, doing business as Encore, which invited them to enroll in the EasySaver Rewards program ("EasySaver").  Customers were then allegedly enrolled in EasySaver regardless of whether they consented to the enrollment.  Regent then charged unauthorized activation and enrollment fees to the account used for the purchase from Provide-Commerce.  Customers enrolled in EasySaver allegedly received no membership benefits of any kind.

### The Parties

4.      Hartford Fire is a Connecticut corporation with its principal place of business located in Hartford, Connecticut.  Hartford Fire is, therefore, a citizen of Connecticut.

5.      Hartford Casualty is an Indiana corporation with its principal place of business located in Hartford, Connecticut.  Hartford Casualty is, therefore, a citizen of Indiana and Connecticut.

6.      Hartford Midwest is an Indiana corporation with its principal place of business located in Hartford, Connecticut.  Hartford Midwest is, therefore, a citizen of Indiana and Connecticut.

2

7.     Encore is a Delaware corporation with its principal place of business located in Maryland. Encore is, therefore, a citizen of Delaware and Maryland.

8.     Regent is a Delaware corporation with its principal place of business located in Maryland. Regent is, therefore, a citizen of Delaware and Maryland.

9.     Provide-Commerce is a Delaware corporation with its principal place of business located in California. Provide-Commerce is, therefore, a citizen of Delaware and California.

10.    Liberty Media is a Delaware corporation with its principal place of business located in Colorado. Liberty Media is, therefore, a citizen of Delaware and Colorado.

11.    On information and belief, Provide-Commerce is a wholly owned subsidiary of Liberty Media. Liberty Media procured insurance policies on behalf of itself and its subsidiaries. Liberty Media is named in this matter because of its interest in the general liability policies under which Provide-Commerce seeks coverage for the Lawsuits.

## Jurisdiction And Venue

12.    This court has jurisdiction under 28 U.S.C. § 1332 because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000.

13.    This court has jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

14.    Venue is proper in this district under 28 U.S.C. § 1391(a)(1) because all defendants reside in this district.

3

## FACTUAL ALLEGATIONS

### The Encore And Regent Primary Policies

15.     Hartford Fire provided commercial general liability insurance coverage to Encore under five insurance policies, each numbered 10 UUN LK0912 (the "Encore Primary Policies"). The Encore Primary Policies each provided coverage for a policy period of one year beginning on November 30.  Collectively, the Encore Primary Policies provided coverage for the period from November 30, 2002 to November 30, 2007.

16.     Encore is a named insured under the Encore Primary Policies.  Regent is not a named insured under the Encore Primary Policies.

17.     Of the Encore Primary Policies, those covering the policy periods from November 30, 2002 to November 30, 2005 contain Commercial General Liability Coverage Form HG 00 01 10 01 (the "'02-'05 CGL Coverage Form").  Those covering the policy periods from November 30, 2005 to November 30, 2007 contain Commercial General Liability Coverage Form HG 00 01 06 05 (the "'05-'10 CGL Coverage Form").

18.     Hartford Fire also provided commercial general liability insurance to Encore and Regent under three additional insurance policies, each numbered 42 UUN IT3661 (the "Regent Primary Policies").  The Regent Primary Policies each provide coverage for a policy period of one year beginning on November 30.  Collectively, the Regent Primary Policies provide coverage for the period from November 30, 2007 to November 30, 2010.

19.     Encore and Regent are named insureds under the Regent Primary Policies.

20.     All of the Regent Primary Policies contain the '05-'10 CGL Coverage Form.

4

## The Encore And Regent Umbrella Policies

21.     Hartford Casualty provided umbrella liability insurance to Encore under two umbrella liability policies, each numbered 10 XHU TT6199 (the "Encore Umbrella Policies"). The Encore Umbrella Policies each provide coverage for a policy period of one year beginning on November 30.  Collectively, the Encore Umbrella Policies provide coverage for the period from November 30, 2005 to November 30, 2007.

22.     Encore is a named insured under the Encore Umbrella Policies.

23.     The Encore Umbrella Policies each contain Umbrella Liability Coverage Form XL 00 03 06 05 (the "'05-'10 Umbrella Coverage Form").

24.     Hartford Casualty provides umbrella liability insurance to Encore and Regent under three additional umbrella liability policies numbered 42 XHU IT3775 (the "Regent Umbrella Policies").  The Regent Umbrella Policies each provide coverage for a policy period of one year beginning on November 30.  Collectively, the Regent Umbrella Policies provide coverage for the period from November 30, 2007 to November 30, 2010.

25.     Encore and Regent are named insureds under the Regent Umbrella Policies.

26.     The Regent Umbrella Policies each contain the Umbrella Coverage Form.

## The ProFlowers And Provide-Commerce Primary Policies

27.     Hartford Midwest provided commercial general liability coverage to ProFlowers, Inc. ("ProFlowers") under an insurance policy numbered 72 UUN US4046 (the "ProFlowers Primary Policy").  The ProFlowers Policy provided coverage for the policy period from June 5, 2003 to June 5, 2004.

28.     ProFlowers is a named insured under the ProFlowers Primary Policy.  During the policy period covered by the ProFlowers Primary Policy ProFlowers changed its name to

5

Provide-Commerce.   As a consequence, Provide-Commerce is a named insured under the ProFlowers Primary Policy.

29.     Hartford Midwest provided commercial general liability coverage to Provide-Commerce under three insurance policies also numbered 72 UUN US4046 (the "Provide-Commerce Primary Policies").   The first of the Provide-Commerce Primary Policies provided coverage for the policy period from June 5, 2004 to June 5, 2005. The second provided coverage for the policy period from June 5, 2005 to November 30, 2005. The third provided coverage for the policy period from November 30, 2005 to November 30, 2006.

30.     Provide-Commerce is a named insured under the Provide-Commerce Policies.

31.     The ProFlowers Primary Policy and the first two Provide-Commerce Primary Policies contain the '02-'05 CGL Coverage Form.   The last of the Provide-Commerce Primary Policies contains the '05-'10 CGL Coverage Form.

## The ProFlowers And Provide-Commerce Umbrella Policies

32.     Hartford Casualty provided umbrella liability insurance to ProFlowers under an umbrella liability policy numbered 72 RHU US4057 (the "ProFlowers Umbrella Policy").   The ProFlowers Umbrella Policy provided coverage for the policy period from June 5, 2003 to June 5, 2004.

33.     ProFlowers is a named insured under the ProFlowers Umbrella Policy.   For the reason set forth in paragraph 28, Provide-Commerce is a named insured under the ProFlowers Umbrella Policy.

34.     Hartford Casualty provided umbrella liability insurance to Provide-Commerce under three umbrella liability policies numbered 72 RHU US4057 (the "Provide-Commerce Umbrella Policies").   The first of the Provide-Commerce Umbrella Policies provided coverage

6

for the policy period from June 5, 2004 to June 5, 2005. The second provided coverage for a policy period from June 5, 2005 to November 30, 2005. The third provided coverage for a policy period from November 30, 2005 to November 30, 2006.

35.　　Provide-Commerce is a named insured under the Provide-Commerce Umbrella Policies.

36.　　The ProFlowers Umbrella Policy and the first two Provide-Commerce Umbrella Policies contain Umbrella Liability Coverage Form XL 00 03 11 00 (the "'04-'05 Umbrella Coverage Form). The third Provide-Commerce Umbrella Policy contains the '05-'10 Umbrella Coverage Form.

### The Liberty Media Primary Policies

37.　　Hartford Fire provided commercial general liability insurance coverage to Liberty Media under three insurance policies, each numbered 34 UEN MS9972 (the "Liberty Media Primary Policies"). The Liberty Media Primary Policies each provided coverage for a policy period of one year beginning on July 31. Collectively, the Liberty Media Primary Policies provided coverage for the period from July 31, 2006 to July 31, 2009.

38.　　Provide-Commerce is a named insured under the two Liberty Media Primary Policies that provide coverage for the policy periods from July 31, 2006 to July 31, 2008.

39.　　Although Provide-Commerce is not a named insured under the Liberty Media Primary Policy that provides coverage for the period from July 31, 2008 to July 31, 2009, it is nevertheless an insured because of its status as Liberty Media's subsidiary.

40.　　The Liberty Media Primary Policies each contain the '05-'10 CGL Coverage Form.

41.    Unlike the other defendants in this lawsuit, Liberty Media was not insured by any umbrella policy issued by Hartford during the relevant time period.

42.    The Encore Primary Policies, Regent Primary Policies, ProFlowers Primary Policy, Provide-Commerce Primary Policies, and the Liberty Media Primary Policies are collectively referred to as the "Primary Policies."

43.    The Encore Umbrella Policies, Regent Umbrella Policies, ProFlowers Umbrella Policy, and Provide-Commerce Umbrella Policies are collectively referred to as the "Umbrella Policies."

## The Romero Lawsuit

44.    On or about August 19, 2009, Josue Romero ("Mr. Romero") filed a class action lawsuit (the "Romero Lawsuit") in the Superior Court of California for the County of San Diego. The Romero Lawsuit names Provide-Commerce, Inc. ("Provide-Commerce"), Regent, and Does 1 through 50 as defendants. A copy of the complaint filed in the Romero Lawsuit (the "Romero Complaint") is attached hereto as Exhibit 1.

45.    The Romero Complaint alleges that Provide-Commerce operated several Internet businesses, including stores known as Red Envelope, Cherry Moon Farms, Secret Spoon, Sharri's Berries, and ProFlowers. As part of its revenue generating efforts, Provide-Commerce allegedly transmitted customers' credit and debit card information to Regent, its marketing partner.

46.    Regent, doing business as Encore, allegedly operates EasySaver, a membership club that claims to offer discounted entertainment, travel, dining, and shopping to its members. In fact, EasySaver is allegedly a means for Regent to charge Provide-Commerce's customers for

8

activation fees and membership fees without providing any benefits, products, or services whatsoever.

47.     According to the Romero Complaint, customers who purchased products from Provide-Commerce were offered coupons, gift codes, and other savings gifts. If they attempted to claim the gifts, they were allegedly directed to a website operated by Regent that requested their email address and zip code. Allegedly, customers who entered their email addresses or zip codes unknowingly authorized Provide-Commerce to provide their credit or debit card information to Regent. Regent allegedly used that information to charge activation fees and membership fees for EasySaver.

48.     According to the Romero Complaint, Mr. Romero did not enter his email address or zip code. Provide-Commerce still allegedly provided Mr. Romero's debit card information to Regent so that Regent could use that information to charge activation fees and membership fees for EasySaver. Regent allegedly did, in fact, bill Mr. Romero's debit card for activation fees and membership fees in connection with EasySaver.

49.     The Romero Complaint purports to be brought on behalf of a class defined as "all persons residing in the United States who, within four years from the date this complaint was filed until present, (1) purchased merchandise from ProFlowers.com, Red Envelope, Cherry Moon Farms, Secret Spoon, or Sharri's Berries; and (2) had their credit card, debit card, or PayPal account billed by EasySaver Rewards."

50.     On or about September 1, 2009, an amended complaint was filed in the Romero Lawsuit. The factual allegations of the amended complaint are substantially the same as those of the Romero Complaint.

51.    On or about October 16, 2009, a second amended complaint (the "Romero Second Amended Complaint") was filed in the Romero Lawsuit, which names Encore as a defendant and adds Deanna Hunt ("Ms. Hunt") as a named plaintiff. Ms. Hunt alleges that when prompted to enter her email address and zip code, she provided the requested information because she believed that the information was needed to complete her transaction and receive a complimentary gift code. A copy of the Romero Second Amended Complaint is attached as Exhibit 2.

52.    Both Mr. Romero and Ms. Hunt allege that they received no benefits, savings or rewards from EasySaver.

53.    The Romero Second Amended Complaint added two subclasses to the class defined by the Romero Complaint. The first subclass was defined as "[a]ll Class members who did not provide their email address or zip code or click any green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce." The second was defined as "[a]ll Class members who provided their email address and zip code and clicked a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce."

### The Sledge Lawsuit

54.    On or about September 24, 2009, Bobbi Sledge ("Ms. Sledge") filed a complaint (the "Sledge Complaint") in a putative class action lawsuit against Provide-Commerce (the "Sledge Lawsuit"). The Sledge Complaint did not name Regent or Encore as defendants, but the factual allegations of the Sledge Complaint are otherwise similar to those of the Romero Lawsuit. A copy of the Sledge Complaint is attached as Exhibit 3.

55. Like the Romero Complaint, the Sledge Complaint alleges that Provide-Commerce and Regent schemed to enroll Provide-Commerce's customers in EasySaver and make unauthorized charges to their debit and credit cards.

56. The Sledge Lawsuit alleges that when completing transactions on an Internet store owned by Provide-Commerce, customers were presented with a promotional advertisement for EasySaver. Provide-Commerce allegedly represented that the offer would include coupons and savings benefits as a reward for shopping on its online retail sites. Customers allegedly were asked to enter their email address and zip code and click an "Accept" button to claim a free coupon and enroll in EasySaver.

57. Ms. Sledge alleges that she did not elect to enroll in EasySaver or authorize Provide-Commerce to share her private payment information. Nevertheless, Provide-Commerce allegedly shared Ms. Sledge's contact information and private payment information with Encore. Encore allegedly used the information to enroll Ms. Sledge in EasySaver and begin charging her payment account unauthorized activation fees and membership fees.

58. Ms. Sledge alleged received no benefits, savings, or services from EasySaver.

59. Ms. Sledge purports to represent a class defined as "[a]ll individuals and entities residing in the United States who purchased merchandise from a Provide Commerce [sic] website, did not affirmatively enroll in [EasySaver], and who incurred a charge on their Private Payment Account from [EasySaver] in connection with their Provide Commerce [sic] transaction from January 1, 2005 to the present." Ms. Sledge also purports to represent a subclass defined as "[a]ll Class members who are 'consumers' as defined by California Civil Code § 1761(d)."

### The Consolidated Class Action Lawsuit

60. By order dated November 13, 2009, the Romero Lawsuit was consolidated

with the Sledge Lawsuit. On December 14, 2009, a consolidated class action complaint (the "Consolidated Complaint") was filed in the consolidated lawsuit (the "Consolidated Lawsuit"). A copy of the Consolidated Complaint is attached as Exhibit 4.

61.     The Consolidated Complaint was filed on behalf of Josue Romero, Deanna Hunt, Kimberly Kenyon, and Gina Bailey. The four individual plaintiffs purport to represent a nationwide class consisting of "all persons residing in the United States who, between August 19, 2005 and the date of Class Notice, (1) purchased merchandise from ProFlowers.com, Red Envelope, Cherry Moon Farms, Secret Spoon, or Sharri's Berries; and (2) had their credit card, debit card or PayPal accounts charged by EasySaver[.]"

62.     In addition, the Consolidated Complaint defines three subclasses. The first subclass is defined as "[a]ll class members who did not (1) provide their email address or zip code, or (2) click a green acceptance button to receive a gift code for their next purchase transaction with [Provide-Commerce]." The second subclass is defined as "[a]ll class members who (1) provided their email addresses and zip codes, and (2) clicked a green acceptance button to receive a gift code for their next purchase transaction with [Provide-Commerce]." The third subclass is defined as "[a]ll class members who had their debit card charged by EasySaver[.]"

63.     The allegations of the Consolidated Complaint are similar to those of the Romero Complaint and the Sledge Complaint. The Consolidated Complaint alleges that Provide-Commerce and Regent, doing business as Encore, conspired to enroll customers in EasySaver without their knowledge and make unauthorized charges to their credit cards, debit cards or PayPal accounts.

64.     The Consolidated Complaint alleges that after making a purchase from an Internet store owned by Provide-Commerce, customers were presented with a window that thanked them

for their order and offered them a gift code for $15.00 off their next purchase. The window instructed customers to click on a link to claim the gift code. Allegedly, customers who clicked on the link were redirected to a webpage owned by Encore that asked them to claim their gift codes by entering their e-mail addresses and zip codes and enrolling in EasySaver.

65.    According to the Consolidated Complaint, Provide-Commerce transferred customers' payment information to Encore when customers were redirected to Encore's webpage. Customers were allegedly enrolled in EasySaver and charged an activation fee of $1.95 and monthly membership fees of $14.95 regardless of whether they entered their e-mail addresses and zip codes.

66.    Customers who were enrolled in EasySaver allegedly did not receive the promised gift codes or any other discounts, rebates, or other membership benefits.

67.    At least one plaintiff reports attempting to call the toll free number listed for EasySaver to inquire about the unauthorized charges, but no one answered the telephone. Another complains that, despite being assured that the unauthorized charges for EasySaver would stop, Encore continued to charge monthly membership fees to a credit card until the account was closed. Finally, a third plaintiff alleges that the charges for EasySaver membership resulted in bounced checks and various fees and charges incurred because of the bounced checks.

### The Herbst Lawsuit

68.    On or about February 19, 2010, Alissa Herbst ("Ms. Herbst") filed a putative class action lawsuit (the "Herbst Lawsuit") in the United States District Court for the District of New Jersey. The Herbst Lawsuit names Encore, EasySaver Rewards, Provide-Commerce and ProFlowers as defendants. A copy of the complaint filed in the Herbst Lawsuit is attached as Exhibit 5.

69.     Like the Consolidated Lawsuit, the Herbst Lawsuit alleges that Provide-Commerce and Encore conspired to enroll consumers in fee based membership clubs, particularly EasySaver.

70.     Ms. Herbst alleges that she was promised a rebate from ProFlowers, which she never received. Instead, she was allegedly charged unauthorized activation fees and membership fees for her unwanted membership in EasySaver.

71.     The Herbst Lawsuit purports to be brought on behalf a class defined as "[a]ll persons or entities who, between January 22, 2003 and the present were charged an activation fee and/or monthly fee for EasySaver Rewards without their authorization as a result of their purchase on ProFlowers.com."

### The Insurance Coverage Dispute

72.     Hartford is currently defending Encore, Regent, and Provide-Commerce in the Consolidated Lawsuit and the Herbst Lawsuit subject to a reservation of rights.

73.     An actual controversy exists between Hartford, on the one hand, and Encore, Regent, Provide-Commerce and Liberty Media on the other, with respect to whether the Policies provide coverage in connection with the Lawsuits.

74.     For the reasons more fully detailed below, the Policies do not provide coverage for Encore, Regent, or Provide-Commerce in connection with the Lawsuits because the Lawsuits do not allege claims within the scope of the insuring agreements of the Policies.

75.     Even if the Lawsuits alleged claims within the scope of the Policies' insuring agreements, certain claims in the Lawsuits are uninsurable as a matter of law and certain exclusions preclude coverage for all of the claims in the Lawsuits.

14

**Count One**
**(Declaratory Judgment—Primary Policies, Insuring Agreement)**

76.     Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if

fully set forth herein.

77.     Count One is brought against all defendants.

78.     Count One seeks a judicial declaration concerning the insurance coverage

provided by the Primary Policies.

79.     The insuring agreement in the '02-'05 CGL Coverage Form provides, in relevant

part, as follows:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "personal and advertising injury" to
> which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "personal and advertising injury" to
> which this insurance does not apply. . . .

('02-'05 CGL Coverage Form, Coverage B, Insuring Agreement § I(B)(1)(a)).

80.     The relevant portion of the insuring agreement in the '05-'10 CGL Coverage Form

is identical to the insuring agreement in the '02-'05 CGL Coverage Form.  (*See* '05-'10 CGL

Coverage Form, Coverage B, Insuring Agreement § I(B)(1)(a)).

81.     The Primary Policies define "personal and advertising injury" as follows:

> "Personal and advertising injury" means injury, including
> consequential "bodily injury", arising out of one or more of the
> following offenses:
>
> a.     False arrest, detention or imprisonment;
> b.     Malicious prosecution;
> c.     The wrongful eviction from, wrongful entry into, or
>        invasion of the right of private occupancy of a room,
>        dwelling or premises that a person occupies, committed by
>        or on behalf of its owner, landlord or lessor;

15

     d.     Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

     e.     Oral, written or electronic publication of material that violates a person's right of privacy;

     f.     Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

     g.     Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

     h.     Discrimination or humiliation  that results in injury to the feelings or reputation of a natural person.

('02-'05 CGL Coverage Form, Definitions § V(17); '05-'10 CGL Coverage Form, Definitions § V(17)).

82.     The Lawsuits do not allege "personal and advertising injury," as defined by the Primary Policies. Accordingly, the claims asserted in the Lawsuits are not within the insuring agreements of the Primary Policies and Hartford has no duty under the Primary Policies to provide a defense or indemnity in connection with the Lawsuits.

## Count Two
### (Declaratory Judgment—Umbrella Policies, Insuring Agreement)

83.     Hartford repeats and incorporates the allegations of paragraphs 1 through 82 as if fully set forth herein.

84.     Count Two is brought against Encore, Regent, and Provide-Commerce.

85.     Count Two seeks a judicial declaration concerning the coverage provided by the Umbrella Policies.

86.     The '03-'04 Umbrella Coverage Form and the '05-'10 Umbrella Coverage Form both contain the following insuring agreement:

> We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage"

16

or "personal and advertising injury" to which this insurance applies
caused by an "occurrence".

('03-'04 Umbrella Coverage Form, Coverages, Insuring Agreements § I(A)(1); '05-'10 Umbrella

Coverage Form, Coverages, Insuring Agreements § I(A)(1)).

87.     The ProFlowers Umbrella Policy and the Provide-Commerce Umbrella Policies

providing coverage for the Policy Periods from June 5, 2003 to November 30, 2005 each contain

an endorsement titled Amendment of Insuring Agreement – Known Injury or Damage, Form No.

XL 00 16 10 01. Although this endorsement modifies the insuring agreement cited above, the

relevant language is unchanged.

88.     The term "personal and advertising injury" has the same definition in the

Umbrella Policies that it has in the Primary Policies.

89.     The Lawsuits do not allege "personal and advertising injury," as that term is used

in the Umbrella Policies. Accordingly, the claims asserted in the Lawsuits are not within the

insuring agreements of the Primary Policies and Hartford has no duty under the Primary Policies

to provide a defense or indemnity in connection with the Lawsuits.

## Count Three
### (Declaratory Judgment—Primary and Umbrella Policies, Damages Uninsurable)

90.     Hartford repeats and incorporates the allegations of paragraphs 1 through 89 as if

fully set forth herein.

91.     Count Three is brought against all defendants.

92.     Count Three seeks a judicial declaration concerning the insurance coverage

provided by both the Primary Policies and the Umbrella Policies (collectively, the "Policies").

17

93.     Under the Policies, Hartford's obligation to provide indemnity is limited to the payment of "damages."   Likewise, Hartford's duty to defend is limited to suits seeking "damages" to which the Policies apply.

94.     The Lawsuits seek, among other things, restitution for money allegedly wrongfully obtained by Encore, Regent, and Provide-Commerce.

95.     As a matter of law, the term "damages," when used in a liability insurance policy, does not include restitution.

96.     Hartford has no duty to indemnify Encore, Regent or Provide-Commerce against claims seeking restitution and is entitled to reimbursement of any defense costs it incurs in connection with any claims seeking restitution.

## Count Four
### (Declaratory Judgment—Primary Policies,
### Exclusion For Conduct Intended To Cause "Personal And Advertising Injury")

97.     Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

98.     Hartford pleads Count Four in the alternative to Count One.

99.     Count Four is brought against all defendants.

100.    Count Four seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

101.    The '02-'05 CGL Coverage Form contains an exclusion that precludes coverage for conduct by the insured that is expected to inflict "personal and advertising injury."   This exclusion provides as follows:

>       This insurance does not apply to:

>       a.      Knowing Violation Of Rights Of Another:

18

> "Personal and advertising injury" caused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(a)).

102.   The '05-'10 CGL Coverage Form also contains a similar exclusion, that also precludes coverage for conduct by the insured that is expected to inflict "personal and advertising injury." The '05-'10 CGL Coverage Form exclusion provides as follows:

> This insurance does not apply to:
>
> a.      Knowing Violation Of Rights Of Another
>
> > "Personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

('05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(a)).

103.   The Lawsuits allege intentional conduct by Provide-Commerce, Regent, and Encore that was intended to cause the harm complained of.

104.   If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then coverage under the Primary Policies is excluded by exclusion A.

105.   Under the Primary Policies, Hartford has no duty to provide a defense or indemnity in connection with the Lawsuits.

## Count Five
### (Declaratory Judgment—Primary Policies, Exclusions Relating To Incorrect Statements By The Insured)

106.   Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

107.   Hartford pleads Count Five in the alternative to Count One.

19

108. Count Five is brought against all defendants.

109. Count Five seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

110. The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form each contain exclusions that preclude coverage for "personal and advertising injury" arising out of certain misstatements by the insured.

111. The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form each contain an identically worded exclusion that excludes coverage for "personal and advertising injury" arising out of written and electronic publications made with knowledge of falsity. This exclusion provides as follows:

> This insurance does not apply to:
>
>     .     .     .
>
> b.    Material Published With Knowledge of Falsity
>
>> "Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(b); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(b)).

112. The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form also contain an exclusion that precludes coverage for claims arising out of goods, products, or services that do not conform to statements made in advertisements of the insured. This exclusion provides as follows:

> This insurance does not apply to:
>
>     .     .     .

g.    "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(g); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(g)).

113.   The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form each contain an identically worded exclusion that precludes coverage for "personal and advertising injury" arising out of incorrect descriptions of the price of goods, products, or services. This exclusion provides as follows:

This insurance does not apply to:

.    .    .

h.    Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(h); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(h)).

114.   The Lawsuits allege that Encore, Regent, and Provide-Commerce represented that EasySaver members would receive gift codes, savings coupons, and other benefits of membership in EasySaver. These promised benefits allegedly included a free gift code in exchange for joining EasySaver and trying the program for 30 days. This description was allegedly incorrect, however, because Encore, Regent, and Provide-Commerce allegedly charged membership fees and activation fees for EasySaver memberships, but failed to provide the promised free gift code or any other benefits to EasySaver members.

21

114.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then coverage under the Primary Policies is excluded by exclusions B, G and/or H.

115.    Under the Primary Policies, Hartford has no duty to provide a defense or indemnity in connection with the Lawsuits.

<div align="center">

**Count Six**
**(Declaratory Judgment—Primary Policies, Materials Published Before Policy Period)**

</div>

116.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

117.    Hartford pleads Count Six in the alternative to Count One.

118.    Count Six is brought against all defendants.

119.    Count Six seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

120.    The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form contain an exclusion that precludes coverage for "personal and advertising injury" arising out of publication of material that was first published before the beginning of the policy period.  The exclusion provides as follows:

> This insurance does not apply to:
>
> .    .    .
>
> c.    Material Published Prior to Policy Period
>
> > "Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(c); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(c)).

<div align="center">22</div>

121.    The Lawsuits allege that Regent's liability arises out of material that was first published before the Regent Primary Policies' policy periods.  The Herbst Lawsuit alleges that the liability of Encore, Provide-Commerce, and ProFlowers arises out of publication of material that was first published prior to the inception of the Primary Policies that cover the policy periods from November 30, 2003 to November 30, 2007.  The Romero Lawsuit, Sledge Lawsuit and Consolidated Lawsuit allege that the liability of Encore, Regent, and Provide-Commerce arises out of publication of material that was first published prior to the inception of the Primary Policies covering the policy periods from November 30, 2005 to November 30, 2007.

122.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then exclusion C applies.

123.    Hartford has no obligation to defend or indemnify Regent in connection with the Lawsuits under the Regent Primary Policies.  Likewise, Hartford has no obligation to defend or indemnify Encore or Provide-Commerce in connection with the Herbst Lawsuit under the Primary Policies covering the policy periods from November 30, 2003 to November 30, 2007.  Hartford also has no obligation to defend or indemnify Encore or Provide-Commerce in connection with the Sledge Lawsuit or the Consolidated Lawsuit under the Primary Policies covering the policy periods from November 30, 2005 to November 30, 2007.

## Count Seven
### (Declaratory Judgment—Primary Policies, Criminal Acts)

124.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

125.    Hartford pleads Count Seven in the alternative to Count One.

126.    Count Seven is brought against all defendants.

127.    Count Seven seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

128.    The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form each contain an identically worded exclusion that precludes coverage for "personal and advertising injury" arising out of criminal acts committed by or at the direction of the insured.   This exclusion provides as follows:

> This insurance does not apply to:
>
> .    .    .
>
> d.    Criminal Acts
>
>> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(d); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(d)).

129.    The conduct alleged in the Lawsuits may be criminal in nature.

130.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then, if the conduct alleged is criminal in nature, coverage under the Primary Policies is excluded by exclusion D.

131.    Under the Primary Policies, Hartford has no duty to defend or indemnify Regent or Encore in connection with the Lawsuits.

<div align="center">

**Count Eight**
**(Declaratory Judgment—Primary Policies, Breach Of Contract)**

</div>

132.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

133.    Hartford pleads Count Eight in the alternative to Count One.

<div align="center">24</div>

134.    Count Eight is brought against all defendants.

135.    Count Eight seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

136.    The '02-'05 CGL Coverage Form and the '05-'10 CGL Coverage Form each contain an identically worded exclusion that precludes coverage for "personal and advertising injury" arising out of most breaches of contract.  This exclusion provides as follows:

> This insurance does not apply to:
>
> .    .    .
>
> f.    Breach Of Contract
>
>> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement."

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(f); '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(f)).

137.    The Romero Lawsuit, Sledge Lawsuit, and Consolidated Lawsuit each allege that Encore, Regent, and Provide-Commerce's conduct was in breach of certain contractual obligations assumed toward the underlying plaintiffs and the class members.  Similarly, although the Herbst Complaint asserts different causes of action, the Herbst Lawsuit seeks damages arising out of the same scheme alleged in the other three lawsuits.  To the extent that the scheme at issue in the other three lawsuits violated contractual obligations, so too does the scheme alleged in the Herbst Lawsuit.

138.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then coverage under the Primary Policies is excluded by exclusion F.

25

139.    Under the Primary Policies, Hartford has no duty to provide a defense or indemnity in connection with the Lawsuits.

## Count Nine
### (Declaratory Judgment—Primary Policies, Electronic And Internet Communications)

140.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

141.    Hartford pleads Count Nine in the alternative to Count One.

142.    Count Nine is brought against all defendants.

143.    This count seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

144.    Each of the Primary Policies contains certain exclusions that preclude coverage for certain claims arising out of electronic communications, including the creation of electronic content and use of that electronic content over the Internet by third parties.

145.    One of these exclusions is contained in the '02-'05 CGL Coverage Form.  The exclusion provides as follows:

> This insurance does not apply to:
>
> .    .    .
>
> (m)    Internet Advertisements And Content Of Others
>
>> (1)    An "advertisement" for others on your web-site;
>> (2)    Placing a link to a web site of others on your web site;
>> (3)    Content, including information, sounds, text, graphics, or images from a web site of others displayed within a frame or border on your web site; or
>> (4)    Computer code, software or programming.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(m)).

146. The '05-'10 CGL Coverage Form contains a similar exclusion that provides as follows:

> This insurance does not apply to:
>
> .    .    .
>
> p.    Internet Advertisements And Content Of Others
>
> > "Personal and advertising injury" arising out of:
> >
> > (1)   An "advertisement" for others on your web site;
> > (2)   Placing a link to a web site of others on your web site;
> > (3)   Content, including information, sounds, text, graphics, or images from a web site of others displayed within a frame or border on your web site; or
> > (4)   Computer code, software or programming used to enable:
> >
> > > (a)   Your web site; or
> > > (b)   The presentation or functionality of an "advertisement" or other content on your web site.

('05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(p)).

147. One of the Encore Primary Policies, which provides coverage for the policy period from November 30, 2006 to November 30, 2007 (the "'06-'07 Encore Primary Policy"), contains an endorsement entitled Exclusion—Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information, Form No. CG 00 67 03 05 (the "Electronic Communication Endorsement").

148. All the Regent Primary Policies and Liberty Media Primary Policies also contain the Electronic Communication Endorsement.

149. The Electronic Communication Endorsement provides, in relevant part, as follows:

B.   The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2.   Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b.   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.   Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(Electronic Communication Endorsement § B).

150.   The Provide-Commerce Primary Policy that provides insurance coverage for the Policy Period from November 30, 2005 to November 30, 2006 (the '05-'06 Provide-Commerce Primary Policy") contains an exclusion that provides as follows:

This insurance does not apply to:

.   .   .

(k)   Your Web Site, Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of "your web site" or an electronic chat room or bulletin board hosted, owned, or over which control is exercised by any insured.

28

('05-'06 Provide-Commerce Primary Policy, '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(k) (as modified by Endorsement, Exclusion – Web Site Related Personal And Advertising Injury, Form No. HC 00 89 10 01)).

151. The '05-'06 Provide-Commerce Primary Policy defines the term "your web site" as follows:

> "Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, that is accessible over an internet.

('05-'06 Provide-Commerce Primary Policy, Endorsement, Exclusion – Web Site Related Personal And Advertising Injury, Form No. HC 00 89 10 01).

152. The '05-'06 Provide-Commerce Primary Policy also contains an endorsement entitled Exclusion – Programming, Form No. HC 21 18 07 98 (the "Programming Endorsement").

153. The Programming Endorsement provides as follows:

> This insurance does not apply to . . . "personal and advertising injury" arising out of or which would not have occurred but for "programming."
>
> "Programming" means any of the following:
>
> 1. Statements or instructions, regardless of the form or method of their embodiment, that are used or intended to be used directly or indirectly in or with a computer or a computer system; or
>
> 2. Any and all information that is used or intended to be used in connection with or to explain such statements or instructions or their operation, such as specifications, flow diagrams or manuals.

(Programming Endorsement).

154.    The Lawsuits arise out of functionality contained in software on the defendants' websites that was used to enroll customers in EasySaver and charge them for activation fees and membership fees, and the programming used to enable that functionality. Moreover, the Lawsuits also allege violation of the Electronic Communications Privacy Act (the "ECPA") which, among other things, limits the sending, transmitting, communicating or distribution of material or information by prohibiting the intentional disclosure or use of the contents of electronic communications with knowledge that the information was obtained through the interception of electronic communication in violation of the ECPA. *See* 18 U.S.C. § 2511(c)-(d).

155.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then coverage is excluded by the exclusions described in this Count.

156.    Under the Primary Policies, Hartford has no duty to provide a defense or indemnity in connection with the Lawsuits.

## Count Ten
### (Declaratory Judgment—Primary Policies, Statutory Right Of Privacy)

157.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

158.    Hartford pleads Count Ten in the alternative to Count One.

159.    Count Ten is brought against all defendants.

160.    This count seeks a judicial declaration concerning the insurance coverage provided by the Primary Policies.

161.    The '02-'05 CGL Coverage Form contains an exclusion that precludes coverage for "personal and advertising injury" arising out of violations of a person's statutory rights of privacy. The exclusion provides as follows:

This insurance does not apply to:

30

   .    .    .

n.     Right Of Privacy Created By Statute

"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

('02-'05 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(n)).

162.    In the '05-'10 CGL Coverage Form, exclusion Q is identical to exclusion N in the '02-'05 CGL Coverage Form. (*See* '05-'10 CGL Coverage Form, Coverage B, Exclusions § I(B)(2)(q)).

163.    The Lawsuits allege conduct by Provide-Commerce, Encore, and Regent that violated certain statutory rights of privacy including, but not limited to, the ECPA.

164.    If the Lawsuits allege "personal and advertising injury"—which Hartford denies—then coverage under those Primary Policies that contain the '02-'05 Coverage Form is excluded by exclusion N and coverage under those Primary Policies that contain the '05-'10 Coverage Form is excluded by exclusion Q.

165.    Under the Primary Policies, Hartford has no duty to indemnify Encore, Regent, or Provide-Commerce against claims in the Lawsuits that arise out of violations of the ECPA or other acts that create a right of privacy and Hartford is entitled to reimbursement of any defense costs it incurs in connection with such claims.

### Count Eleven
**(Declaratory Judgment—Encore Primary Policies and Encore Umbrella Policies, Regent Is Not An Insured)**

166.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

167.    Count Eleven is brought against Regent.

168.    Count Eleven seeks a judicial declaration concerning the insurance coverage provided by the Encore Primary Policies and the Encore Umbrella Policies.

169.    Regent is not an insured under the Encore Primary Policies.

170.    Regent is not an insured under the Encore Umbrella Policies.

171.    Under the Encore Primary Policies and the Encore Umbrella Policies, Hartford has no duty to defend or indemnify Regent in connection with the Lawsuits.

### Count Twelve
**(Declaratory Judgment—Umbrella Policies, "Personal And Advertising Injury" Not Covered By Underlying Insurance)**

172.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 and 90 through 171 as if fully set forth herein.

173.    Hartford pleads Count Twelve in the alternative to Counts One and Two.

174.    Count Twelve is brought against Encore, Regent, and Provide-Commerce.

175.    Count Twelve seeks a judicial declaration concerning the insurance coverage provided by the Umbrella Policies.

176.    The '04-'05 Umbrella Coverage Form and the '05-'10 Umbrella Coverage Form contain an exclusion that precludes coverage for "personal and advertising injury" unless "underlying insurance" applies to claims arising out of that particular "personal and advertising injury." The exclusion provides as follows:

4.      Personal And Advertising Injury

This policy does not apply to "personal and advertising injury".

EXCEPTION

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

('04-'05 Umbrella Coverage Form, Coverages, Exclusions § I(B)(4); '05-'10 Umbrella Coverage Form, Coverages, Exclusions § I(B)(4)).

177.    The term "underlying insurance," as used in the Umbrella Policies, refers to the Primary Policy that provided coverage for the same insured for the same policy period as the particular Umbrella Policy.

178.    The term "personal and advertising injury" has the same definition in the Umbrella Policies that it has in the Primary Policies.

179.    If the Lawsuits alleged "personal and advertising injury"—which Hartford denies—coverage under the Umbrella Policies would be precluded by exclusion 4.

180.    As set forth above, the Primary Policies do not apply to any "personal and advertising injury" alleged by the Lawsuits.  Accordingly, under exclusion 4, the Umbrella Policy also does not apply to any "personal and advertising injury" alleged by the Lawsuits.

181.    Under the Umbrella Policies, Hartford has no duty to defend or indemnify Encore or Regent in connection with the Lawsuits.

<u>Count Thirteen</u>
**(Declaratory Judgment—California Policies, No Coverage For Intentional Acts)**

182.    Hartford repeats and incorporates the allegations of paragraphs 1 through 75 as if fully set forth herein.

33

183.    Count Thirteen is brought against Encore, Regent, and Provide-Commerce.

184.    Count Thirteen seeks a judicial declaration concerning the insurance coverage provided by the ProFlowers Primary Policy, the ProFlowers Umbrella Policy, the Provide-Commerce Primary Policies, and the Provide-Commerce Umbrella Policies (the "California Policies").

185.    The Lawsuits allege willful conduct by Provide-Commerce, Encore, and Regent.

186.    Under the California Insurance Code, Section 533, "[a]n insurer is not liable for a loss caused by the wil[l]ful act of the insured[.]"

187.    The California Policies do not provide coverage for the Lawsuits. Accordingly, under the California Policies, Hartford has no duty to provide a defense or indemnity in connection with the Lawsuits.

## Count Fourteen
### (Reimbursement for Defense Costs)

188.    Hartford repeats and incorporates the allegations of paragraphs 1 through 187 as if fully set forth herein.

189.    Count Fourteen is brought against Encore, Regent, and Provide-Commerce.

190.    Hartford is currently defending Encore, Regent, and Provide-Commerce under the Policies and subject to a full and complete reservation of rights.

191.    Because the Policies do not provide coverage in connection with the Lawsuits, Encore, Regent, and Provide-Commerce are not entitled to a defense under the Policies. Alternatively, because the Policies do not provide coverage for certain claims asserted in the Lawsuits, Encore, Regent, and Provide-Commerce are not entitled to a defense under the Policies as to the non-covered claims asserted in the Lawsuits.

34

192.    Hartford is entitled to be reimbursed for its expenses incurred in defending Encore, Regent, and Provide-Commerce in the Lawsuits. Alternatively, Hartford is entitled to be reimbursed for its expenses that are attributable to defending Encore, Regent, and Provide-Commerce in connection with the non-covered claims asserted in the Lawsuits.

WHEREFORE, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, and Hartford Insurance Company of the Midwest respectfully request that this Honorable Court:

(1)    enter judgment in favor of Hartford and against Encore Marketing International, Inc., Regent Group, Inc., Provide-Commerce, Inc., and Liberty Media Corp. declaring that the Policies do not provide coverage for the Lawsuits;

(2)    enter judgment declaring that Hartford has no obligation to defend or indemnify Encore, Regent, or Provide-Commerce with respect to the Lawsuits;

(3)    award judgment in Hartford's favor and against Encore, Regent, and Provide-Commerce awarding money damages in the amount of Hartford's costs incurred in defending the Lawsuits, which amount will be proven during the course of this litigation; and

(4)    granting such other and further relief as justice may require.

Respectfully submitted,

**MARGOLIS EDELSTEIN**

/s/ Herbert W. Mondros
Herbert W. Mondros, Esquire
(Del. Bar No. 3308)
750 Shipyard Drive, Suite 102
Wilmington, DE 19801
(302) 888-1112
(302) 888-1119 facsimile
hmondros@margolisedelstein.com

*Counsel for Hartford Fire Insurance
Company, Hartford Casualty
Insurance Company, and Hartford
Insurance Company of the Midwest*

DATED: July 21, 2010